DETERMINED BY THE

# SUPREME COURT OF APPEALS

OF

# WEST VIRGINIA

---

## CHARLESTON.

STATE *ex rel.* V. T. CHURCHMAN *et als, relators* v. GRANT P. HALL, MAYOR, ETC. *et al.*

Submitted March 10, 1920. Decided March 16, 1920.

1. STATUTES—*General and Special Acts on Same Subject-Matter Construed Together to Effectuate Manifest Purpose.*

    Where there is an apparent, though not a real or vital inconsistency between the provisions of a general and a special statute relating to the same subject matter, courts will, if possible, so construe or interpret them as to effectuate the purpose manifested by their enactment. (p. 7).

2. MUNICIPAL CORPORATIONS—*State Public Health Council's Power to Remove City Health Commissioners Appointed by Mayor Limited by Statute.*

    Where a provision of a general health statute (section 3, chapter 150, Code 1918) expressly empowers the state public health council to remove from office a city health commissioner who refuses or neglects to observe and enforce the laws and regulations prescribed by the public health council to control and prevent the spread of an epidemic declared to be dangerous to the public health of such city, the exercise of such power is limited in its scope to the situation therein named, and does not, in the absence of express terms, confer authority to remove for other causes, where, as in Charleston, the charter authorizes the mayor of the city to appoint and remove the city health commissioner therefor. (p. 7).

3.  MANDAMUS—*Remedy Not Appropriate When the Right to Relief is Doubtful.*

    Mandamus is not an appropriate process to enforce performance of a public duty where the right to such relief is of doubtful or uncertain character. (p. 7).

4.  SAME—*Relator Must Disclose Clear Right to Enforce Performance of the Duty Demanded.*

    To be available or applicable, the petition and proof should disclose a clear and indisputable right on the part of relators to enforce performance of the duty demanded and a corresponding duty on the part of the officer or agent to perform the act in question. (p. 7).

Original mandamus by the State, on the relation of V. T. Churchman and others, members of the State Public Health Council, against Grant P. Hall, Mayor of the City of Charleston, and others.

*Writ denied.*

*Price, Smith, Spilman & Clay,* for relators.
*Donald O. Blagg* and *Geo. W. McClintic,* for respondents.

LYNCH, JUDGE:

This proceeding in the name of the state at the relation of V. T. Churchman, S. L. Jepson, H. E. Gaynor, H. E. Sloane, J. L. Pyle, W. T. Henshaw and E. H. Thompson, members of the state public health council, has for its objects the compulsory retirement of Dr. R. A. Ireland from the office or position of health commissioner of the City of Charleston under an appointment by Grant P. Hall, mayor of Charleston and corespondent, pursuant to the provisions of the charter of the city as amended by the January, 1919, session of the legislature; and enforcement of a renomination by Hall as such mayor of a person other than Ireland for appointment by them as such health commissioner of the city; and such other and further relief as the nature of the case may require.

The allegations of the petition and its prayer proceed upon the theory of a power or right vested in relators to appoint and control the appointment of, and remove, county and municipal health officers, and when so removed to require the county or municipal authorities to recommend another and different person

for appointment by them as health officer in lieu of the person
so removed. The correctness or propriety of that theory de-
pends upon the true construction of the statute creating the
state health department, considered in connection with the pro-
visions of the charter of the City of Charleston touching the
appointment of a public health commissioner for the city. The
public health council is an administrative body the members of
which are appointed by the Governor by and with the consent of
the Senate, according to the plan of the reorganization of the
public health department by chapter 24 of the 1913 Acts of the
Legislature and amendments thereof by chapter 11, Acts 1915
(chapter 150, Barnes' Code 1918), and by chapter 96, Acts 1919,
passed February 20, 1919. Nothing in the original or amend-
atory acts prior to 1919 conferred upon the state department of
health or public health council as theretofore constituted, the
power or right to interfere in any manner, by appointment, re-
moval or otherwise, with the authorized health department or
health officer of a municipal corporation, except by the provisions
of section 9, ch. 11, Acts 1915 (section 3, ch. 150, Code 1918),
and by that section only when in the opinion of the public health
council the local health authority has failed or refused to en-
force laws and regulations prescribed by the public health coun-
cil for the prevention or control of infectious or contagious dis-
eases declared to be dangerous to public health, or to act as so
directed or required in a public health emergency affecting the
territorial jurisdiction of the local health authority, and for the
removal of the latter for that reason; and making it the duty
of the general municipal authorities immediately upon the event
of such removal to nominate a successor of the person so re-
moved. This section, chapter 96 of the 1919 Acts did not ex-
pressly or impliedly alter, modify or amend in any particular, but
permitted it to remain intact and unrepealed and in full force
and effect, but did amend section 6, ch. 150, Code, and added
section 3-(a), and by the latter conferred upon the municipal
council as the general administrative authority of a municipality
power "to provide for a full-time health officer  *  *  * who
shall give his entire time to the duties of his employment and
the general health and sanitation of his  *  *  * municipality,
*  *  and perform such duties in relation thereto as may be

prescribed by * * * ordinance of the municipality duly entered," etc. Section 6 of the act, as so amended, upon its face seems to require the public health council, upon the recommendation of the proper authority of a municipal corporation, to appoint a health officer therefor for a term of two years from and after July 1, 1919, "unless sooner removed by the said municipality or by the public health council;" and provides that, "should the public health council fail to confirm the nomination of the person recommended as * * * municipal health officer, or should the public health council or other municipal * * * authority remove any such officer, another nomination shall be at once made to the public health council."

Acting upon the assumption of a right to exercise the authority thus impliedly, if not expressly, given with reference to municipal corporations generally, although stated in the alternative, relators informally summoned respondent Ireland before them without the formulation or specification of charges of misconduct on his part in the administration of the office or position to which he was appointed by the mayor of Charleston, or of dereliction in the discharge of the duties required of him by law, or lack of personal or professional qualification on his part for the discharge of such duties, and caused his amotion from the position of city health commissioner and declared the office or position vacant, and demanded of the mayor a renomination of another person having the requisite qualification to act as his successor as such health commissioner. This they did admittedly for no cause whatsoever other than his confessed failure and refusal to devote his entire time to the performance of the duties assigned to him. They did not charge in their petition for this writ or in argument pretend to insist upon any lack of professional or personal qualification or ability, or any neglect or negligence or want of diligence on his part in the administration or discharge of the duties pertaining to the office or position of health commissioner of the city, or that his failure to abandon his general professional practice and devote all of his time and attention to the performance of such duties resulted in injury, annoyance or inconvenience or other harmful consequences to any one or more of the residents or inhabitants of the city, or that there was during his tenure of office any real or vital cause re-

quiring the exclusive devotion of his entire time to the protection of the public against the appearance or prevalence of dangerous disease or diseases. The undisputed proof shows no. inconvenience or even presence of a danger requiring exclusive devotion of his undivided time and attention to the public wants or necessities by respondent.

Having so summarily dismissed him as such commissioner, and the mayor having refused their demand for the nomination of him or some other person as such officer, and having likewise refused to recognize the validity of the acts of the relators in this respect, they applied for and obtained the nisi writ now before us.

Section 35 of the Charleston charter (chapter 9, Acts 1919, Municipal Charters) clothed the mayor of the city with ample power and authority to appoint and remove, with one exception, all the officers of the city named in that section, including a health commissioner, apparently without the usual requirements for the confirmation or approval of the city council, and without the interposition or interference of or by any other power or authority. It provides: "These appointments shall not require any confirmation by the council, but shall be made at the discretion of the mayor, who shall, with like discretion, have the full and complete power of the removal thereof." In other words, he can, it seems, appoint and remove such officers at will, according to this section, without let or hindrance by or from any source whatsoever. This right of appointment and removal by him and the right claimed by relators the legislature conferred at the same session, within six days of each other, the first in order of time being the right conferred upon the mayor of the city.

The priority in time does not, as we construe the enactments as they now are, have the significance, weight, effect or influence or lack of any of the attributes that counsel would have us accord to these statutes. We do not mean to ignore as unworthy of notice the argument predicated upon relator's conception of this difference in the priority of legislative enactments touching the same general subject of legislation. Frequently the order in which inconsistent statutes or inconsistent provisions of the same statute relating to like or similar subjects are enacted has

a decisive effect or bearing upon the question of the legislative intent, meaning and purpose where there is ambiguity, doubt or uncertainty as to the object intended by it. The operation of this canon of construction, however, is limited in its scope and has no application where each statute or the different provisions of the same statute may be so interpreted or construed as to render their provisions harmonious.

This brings us to the inquiry whether or not there is such irreconcilable conflict between the provisions of the state public health statute and the provisions of the city charter concerning the power of appointment and removal of the city health commissioner as warrants resort to the canon of construction relied on by relators. Stating the question in a different form, is not the difference between the statute and the charter, upon a close analysis of their provisions, less a matter of substance and materiality than a casual reading might indicate. The public health statute concedes the right of the mayor of Charleston to nominate and remove a city health officer. It does not purport to alter, amend, modify or repeal the provision of the city charter relating to such authority conferred upon the mayor. That power no statute expressly revokes. On the contrary, there is in the public health statute an express and unqualified, though general, recognition of the right of the municipal authorities to remove from office a city health commissioner. Its language in that regard is direct, positive, unambiguous, unequivocal. Though amended from time to time, that statute does not clearly manifest an intention to withdraw the appointing and removal power from the chief executive officer of the City of Charleston. Instead of negativing, it discloses a purpose rather to re-affirm and recognize anew the existence of his right to utilize such power. For, although, as we have seen, section 6, after referring to the duty of the county court to recommend to the public health council for appointment as county health officer a physician qualified to perform the duties of the office, prescribes the tenure of office as one for a term of four years, "unless removed by said state board of health for good cause," the provisions which follow and relate to a city health officer, by whatever name he may be called, and his official tenure, define in the

alternative the right of the public health council to remove him from office. That is, while in the case of a county health commissioner such power of the public health council to remove is absolute and unqualified, yet, speaking in general terms, in the case of a city health commissioner it is not absolute or exclusive; and clearly the legislature did not intend it should be. The deliberate and repeated use of the disjunctive word "or" cannot be ignored. Used as it is in the statute, it serves as notice of a purpose, as applied to Charleston, not to revoke the right of the mayor of that city theretofore granted to him by the Legislature.

Nor is there between the provisions of the statute and charter such an apparent conflict as warrants the conclusion that if the public health council or the proper city authority may exercise the right of removal, the former acting on its own initiative may do so. If that may be said to be the true construction, utter confusion may result from the inharmonious actions by either or both agencies. That such a situation may arise where intense feeling is aroused is readily conceivable. An opportunity to produce that result evidently was not within the contemplation of the legislature at the time these statutes were enacted. It is therefore our duty to construe and reconcile them so as to avoid, if possible, such confusion as might inevitably be occasioned by a different construction.

Every word, phrase, paragraph and provision of a statute must in construing it be given full force and effect, if that can be done consistently with its purpose, in order to make it effective as far as possible. *Building & Loan Ass'n.* v. *Sohn,* 54 W.Va. 101. This is a well recognized canon of construction, and it is always applicable where necessary to harmonize the provisions of the same or different statutes relating to the same subject matter. This court applied the rule in the case last cited in the construction of a statute, and in *Hope Natural Gas Co.* v. *Shriver,* 75 W. Va. 401, 408, in the construction of a will and the codicil thereto. In the Shriver case it is said that words general in their terms are to be construed or interpreted in connection with or in reference to their appropriate subject, as shown by other words or provisions of the same or

different statutes or any other instrument, whatever its character may be.

The statute establishing the health department and prescribing the duties and defining the powers of the state health council and the charter of the City of Charleston relating to the same general subject speak the legislative intent as to the different territorial jurisdictions of the two agencies, and purport to confer upon the general agency the power to act in the more restricted jurisdiction only where the lesser fails or refuses to perform some imperative duty belonging to it over which the greater has supreme control, as provided in section 3, ch. 150, Code 1918. And where there is no such emergent condition, each has the right and power to act in its own jurisdiction free from interference on the part of the other. This, we think, is a reasonable, indeed the only justifiable conclusion, and gives to the statute and the charter the force and effect necessarily due to each, and avoids the possible ultimate confusion already alluded to.

Relators in the exercise of the powers claimed by them, no doubt, honestly conceived their duty to be such as in their opinion necessitated the removal of the respondent Ireland as health commissioner of the city and the enforced vacation of the office held by him by mandamus, and also thereby to compel the nomination of another in his stead. But respondents equally honestly, no doubt, refused to submit to the employment of such powers for that purpose, relying upon what they claim to be the law defining their rights and powers in the premises. These adverse contentions are avoidable and the necessity for such controversy eliminated by a fair and reasonable construction of the statutory authority of each group of contestants, and thereby force and effect is given to both statutes.

Section 3 of chapter 150 of the Code, as we have seen, discloses legislative purpose to empower the public health council to act upon its own initiative in the circumstances detailed by that section. For as therein stated, "the commissioner of health may enforce the rules and regulations of the state department of health within the territorial jurisdiction of such local health authorities, and for that purpose shall have and may exercise," not the powers conferred upon the state authori-

ties by statute, it is to be noted, but "all the powers given by statutes to local health authorities.  *  *  *  And in such cases, the failure or refusal of any local health officer or local health body to carry out the lawful orders and regulations of the public health council shall be sufficient cause for the removal of such local health officer or local health body from office," etc. But this power according to that section, can be exercised only in emergent conditions affecting the public health within the inferior territorial jurisdictions, as in the case of the prevalence of an epidemic therein likely to affect seriously the public health within such local jurisdiction.  The scope and purpose of that section reflect light upon the questions at issue between relators and respondents, and, we think, manifest an intention to make the relators and respondents supreme in their respective jurisdictions in the absence of an express provision declaratory of a contrary intent.

As a general rule, mandamus is an available or appropriate process only where the petition and proof disclose a clear and indisputable right on the part of the relators to enforce performance of the act or thing demanded and a corresponding duty on the part of the officer to do or perform that particular act or thing.  *Hutton* v. *Holt,* 52 W. Va. 672; *Martin* v. *White,* 74 W. Va. 628; *State ex rel. Smith* v. *County Court,* 78 W. Va. 168.  The right to demand performance and the corresponding duty to perform the act demanded are elements whose existence is essential and determinative of the right to the employment of the process.

*Writ denied.*