STATE *ex rel.* JAMES E. PINSON, *et al.*

*v.*

RILEY VARNEY, *et al.*

(No. 10848)

Submitted September 27, 1956. Decided October 9, 1956.

*Bias & Bias, E. Gaujot Bias, W. Graham Smith, Jr., Slaven & Staker, Lant R. Slaven, Robert J. Staker, J. Brooks Lawson,* for relators.

*John J. Justice, John F. Bronson,* for respondents.

GIVEN, JUDGE:

The State, at the relation of James E. Pinson, Sid A. Ferrell, Mingo P. Keadle, Frank Allara and Howard S. Coleman, in a petition filed herein on the 11th day of September, 1956, prayed a peremptory writ of mandamus requiring the defendants Riley Varney, A. Wayne Hatfield and Leslie E. Phillips, as members of the Board of Ballot Commissioners of Mingo County, to honor and accept a certificate of announcement of the candidacy of Pinson for the office of member of the Board of Education of Mingo County, at the election to be held in that county on November 6, 1956. The certificate of announcement, in usual form, was presented to the board of ballot commissioners, which certificate the board summarily refused to accept or honor. Defendants William Adair, Charles Perry and Andrew Herald filed a demurrer to the petition, based on the premise that the facts alleged in the petition disclosed that no vacancy existed on the Board of Education of Mingo County to be filled at the election to be held November 6, 1956. No question of fact is in dispute. The case was heard on the petition, the demurrer thereto, briefs and oral arguments. An order was previously entered denying the writ prayed for, and stating that the reasons for denying the writ would be later announced in an opinion.

At the time of the holding of the primary election in Mingo County in May, 1956, Okey B. Glenn and C. Fred Shewey were elected members of the Board of Education of Mingo County to fill terms expiring December 31, 1956. Subsequent to the primary election, B. J. Webb resigned as a member of the board and Charles Perry was appointed by the board to fill the vacancy created by the Webb resignation. The regular term of Webb would have expired December 31, 1956, and the appointment of Perry was attempted to be made effective until that date.

On August 21, 1956, C. J. Hamilton and William Adair

resigned as members of the board. On the same day, the board appointed William Adair to fill the vacancy created by the resignation of Hamilton. The regular term of Hamilton would have expired December 31, 1960, and the appointment of Adair to fill that vacancy was attempted to be made effective until that date. Also, on August 21, 1956, the board appointed C. Fred Shewey to fill the vacancy created by the resignation of William Adair. Shewey declined to accept the appointment. The board then appointed the defendant Andrew Herald to that vacancy. The regular term of Adair, terminated by his resignation, would have ended December 31, 1956, and the appointment of Herald to fill such vacancy was attempted to be made effective until that date.

It is the contention of petitioners that the appointments to fill the several vacancies are valid no longer than the date of the general election to be held in Mingo County November 6, 1956, and that candidates to fill such vacancies may be elected at that time. Defendants contend that the appointments to fill the vacancies are valid for the remainder of the regular terms for which the respective members were elected, except they concede, as we believe they must, that the appointment of William Adair can not, in any circumstance, be valid subsequent to the time of the holding of the primary election in Mingo County in 1958, if a person then be elected and qualified to fill the unexpired term of C. J. Hamilton. Thus it appears that the problem before the Court is to determine whether the vacancies occurring in the membership of the board of education subsequent to the primary election held in May, 1956, are such as may be filled by the electorate at the election to be held in November of the same year.

Petitioners rely, primarily, at least, on the following statutory provisions: Code, 18-5-2, as amended, relating to vacancies in offices of members of boards of education, which, in so far as pertinent, reads: "The board shall, by appointment, fill within thirty days any vacancy

that occurs in its membership. Such appointments shall continue until the next general election, when the voters shall elect a successor for the unexpired term * * *"; Code, 3-1-8, which reads: "Any vacancy in any elective office may be filled at a general election"; and Code, 3-10-1, which reads: "Elections to fill vacancies shall be for the unexpired term, and shall be held at the same places, and superintended, conducted and returned, and the result ascertained, certified and declared, in the same manner, and by the same officers, as in general elections; and the persons elected, having first duly qualified, shall enter upon the duties of their respective offices".

These statutory provisions, however, were enacted prior to the enactment of Chapter 86 of the 1951 Acts of the Legislature. Section 5b of that chapter, 3-4-5b, Michie's 1955 Code, in so far as deemed material, reads: "An election for the purpose of electing members of the county board of education shall be held on the same date as the primary elections as now provided by law, but upon a non-partisan ballot printed for the purpose. In such non-partisan election the person receiving the highest number of votes shall be elected for a long term, and if more than one is to be elected for a long term, the one receiving the next highest shall be elected; and if more than two are to be elected the candidate or candidates receiving the next highest votes shall be declared elected for any short term or terms, as the case may be, to fill vacancies* * *". It may be noticed that the quoted provision specifically provides for elections to fill any "long term", or "any short term or terms, as the case may be, to fill vacancies".

Chapter 86 of the 1951 Acts of the Legislature, Section 5a, 3-4-5a, Michie's 1955 Code, also specifically provides the method of "Announcement of Candidacy for Membership on Board of Education". In so far as deemed pertinent, it reads: "Any person who is eligible to hold office as a member of a county board of education may, at least thirty days prior to the day fixed for the primary

election, file a certificate with the clerk of the circuit court of the county, declaring himself a candidate for election to such office * * *". It is significant, we think, that the only statutory provision relating to announcements of candidates for offices of members of boards of education requires that such announcements be filed "thirty days prior to the day fixed for the primary election".

Chapter 86 of the 1951 Acts contained only three sections. One section related to the nomination of candidates, other than candidates for offices of members of boards of education; the next section dealt only with the announcement of candidates for election to offices of members of boards of education; and the last section, 5b, dealt with the election of members of boards of education. It seems clear, therefore, that in the enactment of those sections the Legislature observed clearly the distinction between a primary election for the nomination of candidates, and a general election for the purpose of electing to office. This necessarily seems so, since pertinent statutes eliminated any method of nominating candidates for members of boards of education, but required that such members be elected, not nominated, at "an election" then authorized.

If the several statutory provisions can not be harmonized, controlling effect must be given to the last enactment of the Legislature. "2. And where two distinct statutes stand in pari materia, and sections thereof are in irreconcilable conflict, that section must prevail which can properly be considered as the last expression of the law making power, this without regard to the relative position of such sections in the Code." *Board of Education* v. *County Court of Tyler County*, 77 W. Va. 523, 87 S. E. 870. "Consistency in statutes is of prime importance, and, in the absence of a showing to the contrary, all laws are presumed to be consistent with each other. Where it is possible to do so, it is the duty of the courts, in the construction of statutes, to harmonize and recon-

cile laws, and to adopt that construction of a statutory provision which harmonizes and reconciles it with other statutory provisions * * *". 50 Am. Jur., Statutes, Section 363. See 82 C. J. S., Statutes, Section 365; *State ex rel. Revercomb* v. *O'Brien,* 141 W. Va. 662, 91 S. E. 2d 865; *State ex rel. Thompson* v. *Morton,* 140 W. Va. 207, 84 S. E. 2d 791; *State* v. *Snyder,* 89 W. Va. 96, 108 S. E. 588; *Farmers and Merchants Bank of Reedsville* v. *Kingwood National Bank,* 85 W. Va. 371, 101 S. E. 734.

The basis of petitioners' position rests strongly, if not solely, on the use of the words "general election" in the statutes quoted above. From that basis, they conclude that the election to be held in November, 1956, is the "general election" referred to in the statutes quoted. We believe, however, that the election provided for in section 5b is constituted the general election for the purpose of electing persons to membership on boards of education, whether the election be for a "long term", for a "short term", or "to fill vacancies". The language seems to exclude any other possible meaning. Notice that the statute commands: "An election for the purpose of electing members of the county board of education shall be held on the same date as the primary" — clearly, in legal contemplation, a general election, not a special or a primary election, "an election" separate and distinct from a "primary election", but to be "held on the same date". See *McCoy* v. *Fisher,* 136 W. Va. 447, 67 S. E. 2d 543. Moreover, the provision of Section 5a, quoted above, is the only provision relating to "Announcement of Candidacy", whether such candidacy be for a "long term", a "short term", or to "fill vacancies"; and that section definitely requires that such a certificate be filed "at least thirty days prior to the day fixed for the primary election". Is it not certain that had the Legislature intended that such vacancies be filled at general elections held in November, it would not have specifically required that the announcements be filed thirty days before the "primary election"? Giving the language of Section 5b the only meaning which we believe it can be accorded, it is brought into

harmony with the other statutory provisions quoted and has the effect of authorizing "an election", a general election, to be held at the date of any "primary election", for the purpose of electing members of boards of education, whether the terms for which elected be regular terms or for the filling of vacancies. No other election for such purposes is either expressly or by implication provided for or mentioned in any statute referred to or found by us.

Petitioners point out that Section 7 of Article IV of the State Constitution provides: "* * * When vacancies occur prior to any general election, they shall be filled by appointments, in such manner as may be prescribed herein, or by general law, which appointments shall expire at such time after the next general election as the person so elected to fill the vacancy shall be qualified". They contend that the term "general election", as used in the constitutional provision, necessarily refers only to the general election held in November, since "primary elections were unheard of" at the time of the adoption of the constitutional provision. We think, however, that the 1951 Legislature was not required to use the words "general election" in order to authorize "an election" for the purpose of electing members of boards of education. The clear wording of the Act, Chapter 86, as above pointed out, discloses the intent to do so. This being true, the statutory provision authorizing "an election", a general election for the purpose of electing members of boards of education, does not conflict with the constitutional provision, but is in accord therewith, the effect thereof being that the next general election for members of boards of education, after the election for such members held in May, 1956, will be "an election" to be held on the "date" of the next primary election after that time.

Petitioners further point out that it is "the policy of the lawmakers of this State to permit the voters generally to participate in the selection of candidates for all offices in primary elections whenever possible * * *".

*State ex rel. Revercomb* v. *O'Brien,* 141 W. Va. 662, 91 S. E. 2d 865. That policy, however, can be helpful only in the interpretation or application of legislative enactments, and not for the purpose of avoiding the clear meaning of an enactment. The policy is one for legislative concern. In 72 C. J. S., Policy, at page 213, we find this statement: "Primarily it is for the lawmakers to determine the public policy of the state, for the public policy of a state is a law of the state, and is a legislative and not a judicial function, and it is not the function of the judiciary to declare what is the public policy of the state respecting matters on which the legislature has spoken or to create or announce a public policy of its own." Where the Legislature has acted, within constitutional limitations, this Court is, and should be, firmly bound.

It is argued that such a result as herein announced would thwart the will and command of the electorate, expressed at the election at which Glenn and Shewey were elected. We think there is no basis for such a premise. Glenn and Shewey were elected for definite terms, commencing and ending at definite times. Those terms will be served precisely as if no subsequent vacancies had occurred or subsequent appointments made to fill such vacancies. The conclusion reached accords with the will of the electorate as expressed at that election, and also as expressed by the people, through their legislative representatives, in Chapter 86 of the 1951 Acts of the Legislature.

For the reasons indicated herein, the order denying the peremptory writ prayed for by petitioners was heretofore entered herein.

*Writ denied.*

LOVINS, JUDGE, dissenting:

I respectfully dissent from the Court's opinion in denying a peremptory writ of mandamus. I think there are sufficient reasons to justify the award of a peremptory writ in this proceeding.

The provisions of the Constitution of this State touching the subject of elections to fill vacancies reads in part as follows:

"The general elections of State and County officers, and of members of the Legislature, shall be held on the Tuesday next after the first Monday in November, until otherwise provided by law. * * * Elections to fill vacancies, shall be for the unexpired term."

Article IV, Section 7, Constitution of West Virginia.

Code 18-5, as amended by Chapter 56, Acts of the Legislature, 1945, Regular Session, provides that members of boards of education shall be elected at the general election and prescribes the terms of such members. By Code 18-5, as amended by Chapter 42, Acts of the Legislature, 1941, Regular Session, a vacancy existing in a board of education is authorized to be filled by appointment, the appointment continuing until the next general election at which time the voters shall elect a successor for the unexpired term.

In dealing with vacancies in elective offices, Code, 3-1-8, reads as follows:

"Any vacancy in any elective office may be filled at the general election."

Elections to fill vacancies shall be held at the same places and shall be superintended by the same officers as general elections. Code, 3-10-1.

The public policy of this State is to fill vacancies in elective offices by appointment until the next general election. Code, 3-10-4. See Code, 3-10-8, as amended by Chapter 65, Acts of the Legislature, 1955, Regular Session. As to the creation of vacancies of elective offices, see Code, 6-5-1, as amended by Chapter 149, Acts of the Legislature, 1939, Regular Session; Code, 6-5-2. With

respect to the expiration of the term of a member of a board of education of a county school district, see Code, 18-5-2, as amended by Chapter 42, Acts of the Legislature, 1941, Regular Session and Code, 18-5, as amended by Chapter 56, Acts of the Legislature, 1945, Regular Session.

An examination of the constitution and statutes just cited shows that in this state vacancies existing in elective offices are to be filled at general elections. It is true that by Code, 3-4, as amended by Chapter 86, Acts of the Legislature, 1951, Regular Session, an election for members of the county board of education is held on the same day as the primary election. It may, from a casual consideration, appear that this last enactment of the legislature conflicts with the above mentioned statute, but as hereinafter stated, statutes which are apparently repugnant to each other should be reconciled.

The public policy of this state, as evidenced by numerous statutes and judicial decisions, is tersely stated by Judge Lively in the following language:

> "The general policy of representative government, where the officers, the servants of the people, are selected by election, is that the electorate shall have the right and opportunity of selecting officers to fill vacancies in elective offices. At least that is the policy of this state as evidenced by its Constitution and general laws. * * * ". This is true "* * * generally in all of the county offices, including justices of the peace and constables."

*State* v. *Board of Canvassers*, 87 W. Va. 472, 476, 105 S. E. 695. See *State* v. *O'Brien*, 141 W. Va. 662, 91 S. E. 2d 865.

It is a rule of general application that statutes are presumed to be constitutional. *Duncan* v. *Baltimore & Ohio R. R. Co.*, 68 W. Va. 293, 69 S. E. 1004; *Swearingen* v. *Bond*, 96 W. Va. 193, 196, 122 S. E. 539; *State* v. *Page*,

*Adm'r.,* 100 W. Va. 166, 168, 130 S. E. 426; *Realty Co.* v. *Martin,* 126 W. Va. 915, 924, 30 S. E. 2d 720. Bearing that principle in mind, I think that all of the foregoing statutes, including the statute providing for the election of members of boards of education, are constitutional.

It is contrary to established principles of statutory construction to hold that the various statutes providing for elections to fill vacancies were repealed by implication by Code, 3-4, as amended by Chapter 86, Acts of the Legislature, 1951, Regular Session. Repeals by implication are not favored. *Coal & Coke Ry. Co.* v. *Conley and Avis,* 67 W. Va. 129, 67 S. E. 613; *Kimball* v. *Loughney,* 70 W. Va. 765, 74 S. E. 953; *Belknap* v. *Shock,* 125 W. Va. 385, 24 S. E. 2d 457; *U. S. Coal & Coke Co.* v. *Turk,* 127 W. Va. 368, 33 S. E. 2d 463; *Harbert* v. *County Court,* 129 W. Va. 54, 39 S. E. 2d 177, 179; *State* v. *Morton,* 140 W. Va. 207, 84 S. E. 2d 791. Section 5-b *idem,* is part of a general system of law relating to the election of officers and the filling of vacancies, and should be construed so as to operate harmoniously with that system but should not be construed so as to innovate upon or alter the general system. *Reeves* v. *Ross,* 62 W. Va. 7, 57 S. E. 284. Moreover, it is to be presumed that the legislature did not intend Section 5-b, *idem* to repeal or modify general laws relating to the filling of vacancies unless the legislative intent to do so is plainly set forth in the act. *Reeves* v. *Ross, supra.*

> "In determining the meaning of a statute, it will be presumed, in the absence of words therein, specifically indicating the contrary, that the legislature did not intend to innovate upon, unsettle, disregard, alter or violate, (1) the common law; (2) a general statute or system of statutory provisions, the entire subject matter of which is not directly or necessarily involved in the act; (3) a right or exception based upon settled public policy; (4) the constitution of the state; nor (5) the Constitution of the United States."

Pt. 27, syllabus, *Railway Co.* v. *Conley and Avis,* 67 W.

Va. 129, 67 S. E. 613. See *Spedden* v. *Board of Education*, 74 W. Va. 181, 185, 81 S. E. 724; *State* v. *Davis*, 74 W. Va. 261, 268, 82 S. E. 207; *Bank* v. *Poteet*, 74 W. Va. 511, 521, 82 S. E. 332; *Crockett* v. *Coal & Coke Co.*, 75 W. Va. 325, 329, 83 S. E. 987; *Baker* v. *O'Brien*, 79 W. Va. 101, 108, 90 S. E. 543; *Crookshanks* v. *Ransbarger*, 80 W. Va. 21, 23, 92 S. E. 78; *Ex Parte Ballard L. Anderson*, 81 W. Va. 171, 175, 94 S. E. 31; *Cook* v. *Casualty Co.*, 82 W. Va. 250, 257, 95 S. E. 835; *National Bank* v. *De Berriz*, 87 W. Va. 477, 482, 105 S. E. 900.

Applying the principles laid down in the cases immediately preceding, I think that section 5-b of Chapter 86, *idem*, does not set forth an exclusive time so as to preclude the election of members of boards of education of a county to fill an existing vacancy at a regular general election.

The pertinent statutes may seem to be repugnant, but they can easily be reconciled and the statutes should be so treated. 50 Am. Jur., Statutes, Section 363. See 82 C. J. S., Statutes, Section 365; *State ex rel. Revercomb* v. *O'Brien, supra; State ex rel. Thompson* v. *Morton*, 140 W. Va. 207, 84 S. E. 2d 791; *State* v. *Snyder*, 89 W. Va. 96, 108 S. E. 588; *Farmers and Merchants Bank of Reedsville* v. *Kingwood National Bank*, 85 W. Va. 371, 101 S. E. 734.

Every part of the statute should be given effect, if possible so to do. 25 R. C. L., 1004, section 246; *Building & Loan Association* v. *Sohn*, 54 W. Va. 101, 112, 46 S. E. 222; *State* v. *Hall*, 86 W. Va. 1, 7, 102 S. E. 694; *Long Flame Coal Co.* v. *State Compensation Commissioner*, 111 W. Va. 409, 414, 163 S. E. 16; *State* v. *Jackson*, 120 W. Va. 521, 199 S. E. 876.

The statute providing for election of school board members at the primary election underwent a strange, unusual and unwarranted metamorphosis at the hands of this Court An election held at the same time as a primary election is changed by judicial construction to mean

a general election insofar as the election of school board members is concerned.

Notwithstanding the language of Article IV, Section 7, Constitution of this State, hereinabove quoted, which designates that general elections shall be held "on the Tuesday next after the first Monday in November, until otherwise provided by law"; there is no general law providing otherwise. True, Section 5-b, Chapter 86, Acts of the Legislature, 1951, Regular Session, here considered, may by a strained application be said to be in part a general election as to members of a county board of education.

The apparently inconsistent statutes relating to the filling of vacancies as members of boards of education at a general election and at an election held on the same day as the primary would be reconciled in the following manner: Any vacancy existing in a county board of education before the date of the primary election should be filled at an election held on that date. Any vacancy in such board occurring after the primary election and before the general election should be filled by the election of a person to fill such vacancy at the subsequent general election. In that way, the statutes seemingly repugnant and inconsistent should, and would be reconciled, thus giving every part of such statutes effect.

Moreover, the settled public policy of this state which is characterized as salutary by Judge Lively would be carried out and given force and effect. The citizens of a county or other subdivision would have the right and privilege given them by representative form of government of selecting their own officers. I would have awarded the peremptory writ prayed for.

I am authorized to say that Judge Haymond concurs in this dissent.