KAUFMAN, Tod J., concurring:
 

 (Filed June 29, 2018)
 

 "Privacy is a key civil liberty which defines who we are as Americans."
 

 [1]
 

 The most important part of this case, in my opinion, is about privacy. I write separately to support the majority opinion and to emphasize the privacy aspect implied in it.
 

 Mental Health Treatment and Records
 

 This case is about mental health and mental health records pursuant to W.Va. Code § 27-3-1. The hospital moved, and the lower court ruled on W.Va.R.Civ.P. Rule 12(b)(6) that W.Va. Code § 27-3-1 cannot state a cause of action when W.Va. Code § 57-5-4a et seq. (subpoena for records) is followed. This Court respectfully disagrees.
 

 Mental Health
 

 For far too long, mental health treatment has been stigmatized. Mental health treatment can include various neurological and psychological issues. It can include many different types of treatment and the records concerning it, including the myriad of mental health issues caused by the opiate epidemic, its treatment of addiction, as well as the mental health records generated from this treatment.
 

 Mental health includes "our emotional, psychological, and social well-being. [it] is important at every stage of life, from childhood and adolescence through adulthood."
 
 [2]
 
 Mental Health can include alcoholism, depression, autism, and PTSD, and hundreds of other illnesses, far too numerous to cite.
 
 [3]
 
 Moreover, mental health treatment and the records generated from the treatment are equal protection issues: mental health knows no age limitations, racial barriers, genetic make-up, and sadly, sometimes no cure. This case about the legal privacy of mental health records exposes just one more hurdle in the equal protection battle for those dealing with mental health treatment and records, and for those whose lives without protection run the risk of being further marginalized.
 

 The Health Insurance Portability and Accountability Act hereinafter ("HIPPA") ( 42 U.S.C.A. § 1320a-7c(a)(3)(B)(ii) ), protects disclosure of records and treatment, creating a federal privacy and liberty interest that deserves constitutional protection under the Fourteenth Amendment. In my opinion, this state's mental health statute ( W.Va. Code § 27-3-1 ) implies a liberty interest that can be characterized as a "right of privacy," consistent with HIPPA and W.Va. Code § 27-3-1. This Court should protect the privacy of these records and recognize the interest of privacy for what it is. "It is an interest (through codification of 27-3-1) which cannot be taken away without due process of law."
 
 [4]
 

 ,
 

 [5]
 
 Not long after I began my public service career as a West Virginia State Senator in 1982, I advocated for the bill to require
 
 mental health
 
 insurance coverage to be provided by insurance carriers in all state public employee insurance policies that offered
 
 physical health
 
 protection. The stigma on mental health concerns then, as now, were evident. In years to come, mental health coverage was, and is presently, covered under provisions of the public health insurance plan "(PEIA)" and other health insurance plans, as it should be, consistent with equal protection of health plans for mental health treatment.
 

 Statutory Backdrop
 

 It was not until 2007 that the process for disclosure of confidential mental health information as defined by W.Va. Code § 27-3-1(a), at issue herein, was added to our West Virginia Code. Unless one of the exceptions in W.Va. Code § 27-3-1(b) as applied to the patient is met, or the individual has authorized the disclosure provided in W.Va. Code § 27-3-2 (2007)
 
 or
 
 a Court has approved same after the documents in question are presented to a Court for an
 
 in camera
 
 review to determine through a "balancing test"
 
 [6]
 
 of interests as required by federal and state law, then mental health records can not be disclosed. These statutory requirements were not met in the case below.
 
 Thus, the privacy of a citizen's record who had before sought mental health treatment was violated by disclosure. See
 
 HIPPA; 42 U.S.C.A.§ 1320(a) W.Va. Code § 27-3-1 et seq.
 

 In this case, the courts are essentially balancing the interests of the mental health patients, a minority interest if you will, against a large provider of health care to see what kind of weight to give to each side of this case, with the weight of authority on the citizen's "privacy" side of the equation.
 

 The Statutes in the Case
 

 The statutory construction governing disclosure of medical records ( W.Va. Code § 57-5-4a ) involves subpoenas and the compliance on its face of the subpoena' while the privacy contained in the specific code section controlling mental health records ( W.Va. Code § 27-3-1 ) serves as a separate protection of privacy over and above the general subpoena (57-5-4a). If mental health records were released without the interpretation as made by the majority opinion, the provisions of 27-3-1(a) would simply lack any efficacy or meaning, and render protection (non-disclosure without consent or a court order) as if there were no statutory protection in W.Va. Code § 27-3-1(a) at all. This was done below at the trial court level in Wood County by the granting of the Rule 12(b)(6) motion
 
 [7]
 

 ,
 

 [8]
 
 and it is this ruling which the majority reverses herein.
 

 As the
 
 dissenting opinion
 
 discusses legislative intent, the undersigned does agree that an important part of statutory construction could be to ascertain and give effect to the intent of the legislature. Statutes
 
 should
 
 be interpreted the way they were intended by the legislature to be applied. However, we don't have any published "legislative intent" in our part-time West Virginia legislature
 
 per se
 
 , unless the legislative journals each day or committee notes could be considered such. In this regard, however, the Code Section on mental health record disclosure is a privacy statute and is required to be read co-terminously with other disclosure statutes of all other medical records. One needs little more than to be a strict constructionist to interpret W.Va. Code § 27-3-1 as it is intended. The dissent is correct in emphasizing that "it is the duty of the courts, in the construction of statutes, to harmonize and reconcile laws, and to adopt that construction of a statutory provision which harmonizes and reconciles it with other statutory provisions."
 
 State v. Williams
 
 ,
 
 196 W.Va. 639
 
 , 641,
 
 474 S.E.2d 569
 
 , 571 (1996) (quoting
 
 State ex rel. Pinson v. Varney
 
 ,
 
 142 W.Va. 105
 
 , 109-10,
 
 96 S.E.2d 72
 
 , 75 (1956) ). This Court vehemently disagrees with the dissent on how the statutory provisions are harmonized and reconciled. As the old saying goes, there is nothing wrong with the lamb and the lion lying down next to each other ... just as long as the lamb is not inside the belly of the lion ....
 

 The Subpoena
 

 The issuing of a subpoena is a powerful tool.
 
 [9]
 
 One using it, the lawyer or the layperson with the Clerk's signature, essentially, is acting like one who is acting in the name of the State. Not only are subpoenas powerful tools in discovery, but they can be issued and signed by any attorney as an officer of the Court.
 
 See
 
 W.Va.R.Civ.P. 45(a)(3). Without the limitations and exceptions of W.Va. Code § 27-3-1 et seq., the subpoena becomes an over-reaching method for potential abuse and can be used to invade the liberty interests of citizens who have sought mental health treatment. Without the requirements of W.Va. Code § 27-3-1 read
 
 in pari materia
 

 [10]
 
 , with W.Va. Code § 57-5-4a, the subpoena can cause unnecessary delays, unnecessary costs and an evisceration of the rights of citizens in the name of our court system constructed to protect the very rights sought to be preserved.
 

 Concurring Ruling
 

 For these additional reasons, and particularly the constitutional one on the issue of privacy, I concur in the majority's opinion and result. By concurring, I would also reverse the Rule 12(b)(6) Order by the lower court and permit amending the complaint, allowing this mental health action to proceed to trial.
 

 Syllabus Point 5 provides
 

 [w]hen a party to a civil action seeks to utilize W. Va. R. Civ. P. 45 to subpoena an opposing party's medical records from a nonparty (as opposed to obtaining them by virtue of a release tendered by the party/patient), notice to the party/patient must occur sufficiently in advance of service of the subpoena to provide a reasonable opportunity for the patient/party to object to the request.
 

 In light of this amendment, the majority's opinion is self-limiting, applying only to those subpoena disclosures which have already occurred or will occur until the effective date of the amendment. The amendment notwithstanding, the practical ramifications of the majority's opinion are wholly unsettling and demonstrate how badly its analysis has missed the mark.
 

 It begs the question what expectations the majority had, if any, as to how a hospital should have handled subpoenas issued prior to its opinion. Was a hospital in receipt of a subpoena required to scour the hundreds or thousands of pages of medical records on a patient for any mere reference, "record or characterization" of any semblance of a "mental health" matter?
 
 See
 

 W. Va. Code § 27-3-1
 
 (a). Mental health information per the language of the statute includes not only an obvious mental health hospital admission, but any "record or characterization" of mental health treatment. This would presumably include any reference thereto in a past medical history or list of medications (items which are included repeatedly in nearly every hospital document created during an admission). And what was the hospital to do upon discovering such references? The statute forbids disclosing that any such information even exists; therefore, potential options such as redaction, notifying the litigants or the court officer subpoenaing the information would not appear to have been viable options. Was the hospital simply to "hide" such information and pretend it never existed for fear of violating the statute? Was the hospital to risk non-compliance with the subpoena at the risk of being sued for even alerting the parties that certain information, though properly requested, will not be provided if it even exists? These are quagmires peculiar to hospital records because of their overwhelming breadth of content and volume that simply do not exist if a subpoena is being issued directly to a mental health facility or provider: obviously the entirety of that record is,
 
 presumptively
 
 , a matter which is subject to the statute, a fact well-known to and able to be addressed head-on by the litigants. (continued ...)
 

 That is not to say, obviously, that no cause of action lies for violation of West Virginia Code § 27-3-1. This Court has previously held that "[t]here is a private tort cause of action for a violation of W. Va. Code, 27-3-1 [1977]." However, such a cause of action under the statute lies only against those who are subject to the statute-mental health providers and facilities. Moreover, my position on the inapplicability of the statute to Camden Clark's production of medical records pursuant to a subpoena is in no way affected by Syllabus Point 3 of
 
 R. K. v. St. Mary's Med. Ctr., Inc
 
 .,
 
 229 W. Va. 712
 
 ,
 
 735 S.E.2d 715
 
 (2012), which holds simply that a "
 
 common-law
 
 tort claim[ ] based upon the wrongful disclosure of medical or personal health information [is] not preempted by [HIPAA]." (emphasis added). First, as is obvious, the majority opinion does not address the viability of a common law tort claim.
 
 R. K
 
 . did not reference in any fashion the statute at issue. More importantly, however, the absence of liability in this instance is not premised on HIPAA preemption. Rather, it is based upon the wholesale inapplicability of the statute at issue, as explained herein.
 

 Beaney,
 
 The Constitutional Right to Privacy in the Supreme Court
 
 ,
 
 1962 Sup.Ct.Rev. 212
 
 ; citing Nutting,
 
 The Fifth Amendment and Privacy
 
 ,
 
 18 U. Pitt. L. Rev. 533
 
 (1957).
 

 "It can be argued that if free speech, free press, and freedom of religion can all be found implicit in the term 'liberty' in the Fourteenth Amendment, little more is needed to add the right to privacy to that list. On the other hand, it is true that by including the meaning of First Amendment rights in the Fourteenth Amendment a court has the guidance furnished by First Amendment cases. In the course of examining the power of the federal government to refuse to issue passports, the Court stated that the right to travel is a part of the "liberty" of which the citizen cannot be deprived without due process of law under the Fifth Amendment, a conclusion with which the Solicitor General agreed. It is only a short step, then, to assert that the right to privacy, like the right to travel, is essential to a free society and that interference with that right is an intrusion on the 'liberty' of the person affected."
 
 Id.
 
 at 249; citing
 
 Kent v. Dulles
 
 ,
 
 357 U.S. 116
 
 ,
 
 78 S.Ct. 1113
 
 ,
 
 2 L.Ed.2d 1204
 
 (1958).
 

 "Balancing" means for a trial judge to determine whether the public interest (in the ends of justice) to disclose records outweighs the privacy of records protected from disclosure. In these
 
 in camera
 
 reviews, which the undersigned has performed over the past 30 years as a trial judge, name and events can be redacted by the trial judge to protect certain privacy. In other instances, after reviewing documents
 
 in camera
 
 , the trial judge may only permit seeing but not copying court records. Further, an errata sheet can be prepared and no disclosure authorized; courts can place records under seal and not disclose, pending review by the West Virginia Supreme Court of Appeals. These are not exhaustive or innovative techniques by any stretch that may be used by a trial judge in determining disclosure or privilege
 
 in camera
 
 review, only some. Judges should use their judicial discretion and the judicial process available to always find the privacy in their records first, and then the determination of justice shall follow.
 

 A motion for W.Va.R.Civ.P. Rule 12(b)(6) should rarely be granted by the trial court. Its jurisprudence is to resolve disputes on the merits. Here, as the majority holds, there is a cause of action under W.Va. Code § 27-3-1 as a matter of law.
 

 The trial court, in appraising the sufficiency of complaint on a motion to dismiss for failure to state a claim, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him or her to relief. W.Va.R.Civ.P 12(b)(6) ;
 
 see also
 

 Holbrook v. Holbrook
 

 , 474
 
 196 W. Va. 720
 
 S.E.2d 900, (1996).
 

 Subpoenas command each person to whom it is directed to attend and give testimony or to produce and permit inspection and copying of designated books, documents or tangible things in the possession, custody or control of that person, or to permit inspection of premises, at a time and place therein specified. W.Va.R.Civ.P. 45.
 

 [Latin, Upon the same subject.] A designation applied to statutes or general laws that were enacted at different times but pertain to the same subject or object. Statutes
 
 in pari materia
 
 must be interpreted in light of each other since they have a common purpose for comparable events or items.
 
 West's Encyclopedia of American Law (
 
 The Gale Group, Inc, 2
 
 nd
 
 ed. 2008).