No. 17-0643 – *Barber v. Camden Clark Memorial Hospital*

KAUFMAN, Tod J., concurring:

**FILED**

**June 29, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*"Privacy is a key civil liberty which defines who we are as Americans."*[1]

The most important part of this case, in my opinion, is about privacy. I write separately to support the majority opinion and to emphasize the privacy aspect implied in it.

### Mental Health Treatment and Records

This case is about mental health and mental health records pursuant to W.Va. Code § 27-3-1. The hospital moved, and the lower court ruled on W.Va.R.Civ.P. Rule 12(b)(6) that W.Va. Code § 27-3-1 cannot state a cause of action when W.Va. Code § 57-5-4a et seq. (subpoena for records) is followed. This Court respectfully disagrees.

### Mental Health

For far too long, mental health treatment has been stigmatized. Mental health treatment can include various neurological and psychological issues. It can include many different types of treatment and the records concerning it, including the myriad of mental

---

[1] Apple CEO Tim Cook, *New User Protections* (CNN Television Broadcast June 4, 2018).

health issues caused by the opiate epidemic, its treatment of addiction, as well as the mental health records generated from this treatment.

Mental health includes "our emotional, psychological, and social well-being. [it] is important at every stage of life, from childhood and adolescence through adulthood."[2] Mental Health can include alcoholism, depression, autism, and PTSD, and hundreds of other illnesses, far too numerous to cite.[3] Moreover, mental health treatment and the records generated from the treatment are equal protection issues: mental health knows no age limitations, racial barriers, genetic make-up, and sadly, sometimes no cure. This case about the legal privacy of mental health records exposes just one more hurdle in the equal protection battle for those dealing with mental health treatment and records, and for those whose lives without protection run the risk of being further marginalized.

The Health Insurance Portability and Accountability Act hereinafter ("HIPPA") (42 U.S.C.A. § 1320a – 7c(a)(3)(B)(ii)), protects disclosure of records and treatment, creating a federal privacy and liberty interest that deserves constitutional protection under the Fourteenth Amendment. In my opinion, this state's mental health statute (W.Va. Code § 27-3-1) implies a liberty interest that can be characterized as a "right of privacy," consistent with HIPPA and W.Va. Code § 27-3-1. This Court should protect

---

[2] *What is Mental Health*?, Mental Health.gov, https://www.mentalhealth.gov/basics/what-is-mental-health. (August 29, 2017).
[3] Diagnostic and Statistical Manual of Mental Disorders (DSM-5®) (American Psychiatric Association Publishing, 5th ed. 2018).

the privacy of these records and recognize the interest of privacy for what it is. "It is an interest (through codification of 27-3-1) which cannot be taken away without due process of law."[4,5]

Not long after I began my public service career as a West Virginia State Senator in 1982, I advocated for the bill to require *mental health* insurance coverage to be provided by insurance carriers in all state public employee insurance policies that offered *physical health* protection. The stigma on mental health concerns then, as now, were evident. In years to come, mental health coverage was, and is presently, covered under provisions of the public health insurance plan "(PEIA)" and other health insurance plans, as it should be, consistent with equal protection of health plans for mental health treatment.

---

[4] Beaney, *The Constitutional Right to Privacy in the Supreme Court*, 1962 SUP.CT.REV. 212; citing Nutting, *The Fifth Amendment and Privacy*, 18 U. PITT. L. REV. 533 (1957).
[5] "It can be argued that if free speech, free press, and freedom of religion can all be found implicit in the term 'liberty' in the Fourteenth Amendment, little more is needed to add the right to privacy to that list. On the other hand, it is true that by including the meaning of First Amendment rights in the Fourteenth Amendment a court has the guidance furnished by First Amendment cases. In the course of examining the power of the federal government to refuse to issue passports, the Court stated that the right to travel is a part of the 'liberty' of which the citizen cannot be deprived without due process of law under the Fifth Amendment, a conclusion with which the Solicitor General agreed. It is only a short step, then, to assert that the right to privacy, like the right to travel, is essential to a free society and that interference with that right is an intrusion on the 'liberty' of the person affected." *Id.* at 249; citing *Kent v. Dulles*, 357 U.S. 116 (1958).

It was not until 2007 that the process for disclosure of confidential mental health information as defined by W.Va. Code § 27-3-1(a), at issue herein, was added to our West Virginia Code. Unless one of the exceptions in W.Va. Code § 27-3-1(b) as applied to the patient is met, or the individual has authorized the disclosure provided in W.Va. Code § 27-3-2 (2007) *or* a Court has approved same after the documents in question are presented to a Court for an *in camera* review to determine through a "balancing test"[6] of interests as required by federal and state law, then mental health records can not be disclosed. These statutory requirements were not met in the case below. *Thus, the privacy of a citizen's record who had before sought mental health treatment was violated by disclosure. See* HIPPA; 42 U.S.C.A.§ 1320(a) W.Va. Code § 27-3-1 et seq.

In this case, the courts are essentially balancing the interests of the mental health patients, a minority interest if you will, against a large provider of health care to see

---

[6] "Balancing" means for a trial judge to determine whether the public interest (in the ends of justice) to disclose records outweighs the privacy of records protected from disclosure. In these *in camera* reviews, which the undersigned has performed over the past 30 years as a trial judge, name and events can be redacted by the trial judge to protect certain privacy. In other instances, after reviewing documents *in camera*, the trial judge may only permit seeing but not copying court records. Further, an errata sheet can be prepared and no disclosure authorized; courts can place records under seal and not disclose, pending review by the West Virginia Supreme Court of Appeals. These are not exhaustive or innovative techniques by any stretch that may be used by a trial judge in determining disclosure or privilege *in camera* review, only some. Judges should use their judicial discretion and the judicial process available to always find the privacy in their records first, and then the determination of justice shall follow.

what kind of weight to give to each side of this case, with the weight of authority on the citizen's "privacy" side of the equation.

## The Statutes in the Case

The statutory construction governing disclosure of medical records (W.Va. Code § 57-5-4a) involves subpoenas and the compliance on its face of the subpoena while the privacy contained in the specific code section controlling mental health records (W.Va. Code § 27-3-1) serves as a separate protection of privacy over and above the general subpoena (57-5-4a). If mental health records were released without the interpretation as made by the majority opinion, the provisions of 27-3-1(a) would simply lack any efficacy or meaning, and render protection (non-disclosure without consent or a court order) as if there were no statutory protection in W.Va. Code § 27-3-1(a) at all. This was done below at the trial court level in Wood County by the granting of the Rule 12(b)(6) motion[7],[8] and it is this ruling which the majority reverses herein.

As the *dissenting opinion* discusses legislative intent, the undersigned does agree that an important part of statutory construction could be to ascertain and give effect

---

[7] A motion for W.Va.R.Civ.P. Rule 12(b)(6) should rarely be granted by the trial court. Its jurisprudence is to resolve disputes on the merits. Here, as the majority holds, there is a cause of action under W.Va. Code § 27-3-1 as a matter of law.

[8] The trial court, in appraising the sufficiency of complaint on a motion to dismiss for failure to state a claim, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him or her to relief. W.Va.R.Civ.P 12(b)(6); *see also* <u>Holbrook v. Holbrook</u>, 474 196 W. Va. 720 S.E.2d 900, (1996).

to the intent of the legislature. Statutes *should* be interpreted the way they were intended by the legislature to be applied. However, we don't have any published "legislative intent" in our part-time West Virginia legislature *per se*, unless the legislative journals each day or committee notes could be considered such. In this regard, however, the Code Section on mental health record disclosure is a privacy statute and is required to be read co-terminously with other disclosure statutes of all other medical records. One needs little more than to be a strict constructionist to interpret W.Va. Code § 27-3-1 as it is intended. The dissent is correct in emphasizing that "it is the duty of the courts, in the construction of statutes, to harmonize and reconcile laws, and to adopt that construction of a statutory provision which harmonizes and reconciles it with other statutory provisions." *State v. Williams*, 196 W.Va. 639, 641, 474 S.E.2d 569, 571 (1996)(quoting *State ex rel. Pinson v. Varney*, 142 W.Va. 105, 109-10, 96 S.E.2d 72, 75 (1956)). This Court vehemently disagrees with the dissent on how the statutory provisions are harmonized and reconciled. As the old saying goes, there is nothing wrong with the lamb and the lion lying down next to each other . . . just as long as the lamb is not inside the belly of the lion . . . .

The Subpoena

The issuing of a subpoena is a powerful tool.[9]  One using it, the lawyer or the layperson with the Clerk's signature, essentially, is acting like one who is acting in the

---

[9] Subpoenas command each person to whom it is directed to attend and give testimony or to produce and permit inspection and copying of designated books, documents or tangible things in the possession, custody or control of that person, or to permit inspection of premises, at a time and place therein specified. W.Va.R.Civ.P. 45.

name of the State. Not only are subpoenas powerful tools in discovery, but they can be issued and signed by any attorney as an officer of the Court. *See* W.Va.R.Civ.P. 45(a)(3). Without the limitations and exceptions of W.Va. Code § 27-3-1 et seq., the subpoena becomes an over-reaching method for potential abuse and can be used to invade the liberty interests of citizens who have sought mental health treatment. Without the requirements of W.Va. Code § 27-3-1 read *in pari materia*[10], with W.Va. Code § 57-5-4a, the subpoena can cause unnecessary delays, unnecessary costs and an evisceration of the rights of citizens in the name of our court system constructed to protect the very rights sought to be preserved.

Concurring Ruling

For these additional reasons, and particularly the constitutional one on the issue of privacy, I concur in the majority's opinion and result. By concurring, I would also reverse the Rule 12(b)(6) Order by the lower court and permit amending the complaint, allowing this mental health action to proceed to trial.

---

[10] [Latin, Upon the same subject.] A designation applied to statutes or general laws that were enacted at different times but pertain to the same subject or object. Statutes *in pari materia* must be interpreted in light of each other since they have a common purpose for comparable events or items. West's Encyclopedia of American Law (The Gale Group, Inc, 2nd ed. 2008).