IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2013 Term

_____

No. 12-0764

_____

FILED

October 21, 2013

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

JUDITH COLLETT, ASSESSOR OF TAYLOR COUNTY, AND THE COUNTY
COMMISSION OF TAYLOR COUNTY,
Respondents Below, Petitioners

v.

EASTERN ROYALTY, LLC, AS SUCCESSOR PETITIONER TO WEST VIRGINIA
COAL MINE, LLC,
Petitioner Below, Respondent

_____

Appeal from the Circuit Court of Taylor County
The Honorable Alan D. Moats, Judge
Civil Action No. 10-P-11

AFFIRMED
_____

AND

_____

No. 12-0765

_____

JUDITH COLLETT, ASSESSOR OF TAYLOR COUNTY, AND THE COUNTY
COMMISSION OF TAYLOR COUNTY,
Respondents Below, Petitioners

v.

COALQUEST DEVELOPMENT, LLC,
Petitioner Below, Respondent

_____

Appeal from the Circuit Court of Taylor County
The Honorable Alan D. Moats, Judge
Civil Action No. 10-P-12

AFFIRMED
_____


AND


_____

No. 12-0766
_____


JUDITH COLLETT, ASSESSOR OF TAYLOR COUNTY, AND THE COUNTY
COMMISSION OF TAYLOR COUNTY,
Respondents Below, Petitioners

v.

PATRIOT MINING COMPANY, INC.,
Petitioner Below, Respondent


_____


Appeal from the Circuit Court of Taylor County
The Honorable Alan D. Moats, Judge
Civil Action No. 10-P-13

AFFIRMED
_____


AND


_____

No. 12-0767
_____

JUDITH COLLETT, ASSESSOR OF TAYLOR COUNTY, AND THE COUNTY COMMISSION OF TAYLOR COUNTY,
Respondents Below, Petitioners

v.

TRIO PETROLEUM CORPORATION, WACO OIL & GAS, INC., MIKE ROSS, AND I.L. MORRIS & MIKE ROSS, INC.,
Petitioners Below, Respondents

_____

Appeal from the Circuit Court of Taylor County
The Honorable Alan D. Moats, Judge
Civil Action No. 10-P-14

AFFIRMED
_____

AND

_____

No. 12-0768
_____

JUDITH COLLETT, ASSESSOR OF TAYLOR COUNTY, AND THE COUNTY COMMISSION OF TAYLOR COUNTY,
Respondents Below, Petitioners

v.

COALQUEST DEVELOPMENT, LLC,
Petitioner Below, Respondent

_____

Appeal from the Circuit Court of Taylor County
The Honorable Alan D. Moats, Judge
Civil Action No. 11-P-17

AFFIRMED

_____

Submitted: September 25, 2013
Filed: October 21, 2013

G. Nicholas Casey, Jr., Esq.
Webster J. Arceneaux, III, Esq.
Sang Ah Koh, Esq.
Lewis, Glasser, Casey & Rollins, PLLC
Charleston, West Virginia
Counsel for the Petitioners

Herschel H. Rose III, Esq.
Steven R. Broadwater, Esq.
Rose Law Office
Charleston, West Virginia
Counsel for Respondent Eastern
Royalty LLC

Floyd M. Sayre, III, Esq.
Bowles Rice LLP
Martinsburg, West Virginia
Counsel for Respondents Trio Petroleum
Corporation, Waco Oil & Gas, Inc., Mike
Ross, and I.L. Morris & Mike Ross, Inc.

David E. Goddard, Esq.
Goddard & Wagoner
Clarksburg, West Virginia
Counsel for Respondents Coalquest
Development, LLC and Patriot Mining
Company, Inc.

CHIEF JUSTICE BENJAMIN delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*." Syllabus point 4, *Burgess v. Porterfield,* 196 W.Va. 178, 469 S.E.2d 114 (1996)." Syl. pt. 1, *In re Tax Assessment of Foster Found. Woodlands Ret. Cmty.*, 223 W. Va. 14, 672 S.E.2d 150 (2008).

2.      """A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. Pt. 2, *State v. Epperly,* 135 W.Va. 877, 65 S.E.2d 488 (1951).' Syl. Pt. 1, *State v. Jarvis,* 199 W.Va. 635, 487 S.E.2d 293 (1997)." Syl. pt. 2, *Mace v. Mylan Pharm., Inc.*, 227 W. Va. 666, 714 S.E.2d 223 (2011).

3.      """The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syllabus point 1, *Smith v. State Workmen's Compensation Commissioner,* 159 W.Va. 108, 219 S.E.2d 361 (1975).' Syl Pt. 3, *Davis Mem'l Hosp. v. W. Va. State Tax Comm'r,* 222 W.Va. 677, 671 S.E.2d 682 (2008)." Syl. pt. 4, *Mace v. Mylan Pharm., Inc.*, 227 W. Va. 666, 714 S.E.2d 223 (2011).

i

4.      "'""In ascertaining legislative intent, effect must be given to each part of the statute and to the statute as a whole so as to accomplish the general purpose of the legislation." Syl. Pt. 2, *Smith v. State Workmen's Compensation Commissioner,* 159 W.Va. 108, 219 S.E.2d 361 (1975).' Syl. Pt. 2, *White v. Wyeth,* 227 W.Va. 131, 705 S.E.2d 828 (2010)." Syl. pt. 5, *Mace v. Mylan Pharm., Inc.*, 227 W. Va. 666, 714 S.E.2d 223 (2011).

5.      "In all cases, it is incumbent upon the circuit court, as it is upon the county commission and the assessor, to set the assessed value of all parcels of land at the amount established by the State Tax Commissioner[.] W. Va. Code § 18-9A-11." Syl. pt. 5, *Tug Valley Recovery Ctr., Inc. v. Mingo Cnty. Comm'n*, 164 W. Va. 94, 261 S.E.2d 165 (1979).

6.      "An appellate court should not overrule a previous decision recently rendered without evidence of changing conditions or serious judicial error in interpretation sufficient to compel deviation from the basic policy of the doctrine of stare decisis, which is to promote certainty, stability, and uniformity in the law." Syl. pt. 2, *Dailey v. Bechtel Corp.*, 157 W. Va. 1023, 207 S.E.2d 169 (1974).

7.      Pursuant to W. Va. Code § 11-1C-10(g) (2010), upon receiving the appraisal of natural resources property from the State Tax Commissioner, a county assessor may either accept or reject that appraisal. If the assessor rejects the appraisal, the

assessor must show just cause for doing so to the Property Valuation Training and Procedures Commission, including a plan by which a different appraisal should be conducted. If the assessor accepts the appraisal, the assessor is then foreclosed from later challenging the appraisal before either the Property Valuation Training and Procedures Commission under W. Va. Code § 11-1C-10(g) or the Board of Equalization and Review under W. Va. Code § 11-3-24 (2010). To the extent that *In re 1994 Assessments of Property of Righini*, 197 W. Va. 166, 475 S.E.2d 166 (1999), holds otherwise, it is expressly overruled.

Benjamin, Chief Justice:

The petitioners, Judith Collet, Assessor of Taylor County ("Assessor"), and the Taylor County Commission ("County Commission"), appeal the May 10, 2012, Final Order of the Circuit Court of Taylor County as to each of the respondents herein: Eastern Royalty, LLC, as successor petitioner to West Virginia Coal Mine, LLC ("Eastern") (Case Number 12-0764); Coalquest Development, LLC ("Coalquest") (Case Numbers 12-0765 and 12-0768); Patriot Mining Company, Inc. ("Patriot") (Case Number 12-0766); and Trio Petroleum Corporation, Waco Oil & Gas, Inc., Mike Ross, and I.L. Morris & Mike Ross, Inc. ("Trio") (Case Number 12-0767). In the circuit court's May 10, 2012 order, the court reversed the Board of Equalization and Review ("Board"). The court found that the Assessor had violated W. Va. Code § 11-1C-10(g) (2010) by challenging the Commissioner's appraisals of the respondents' property in hearings before the Board after she had previously accepted those appraisals. Accordingly, the court found the Board's decision to increase the natural resources property tax owed by the respondents following the hearings was in error. On appeal, the petitioners argue that the proceedings before the Board were conducted in accordance with the applicable statutory provisions and that the Board-ordered increase in taxes was legitimate and warranted.

Because the factual background and procedural history giving rise to the cases at bar are largely the same, the cases have been consolidated for this Court's

1

consideration and resolution. After thoroughly reviewing the record presented, the briefs, the relevant legal authorities, and the arguments of the petitioners and the respondents, we find that the circuit court did not commit error below with regard to its May 10, 2012, order. We therefore affirm the order.

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Respondents Eastern, Coalquest, Patriot, and Trio own coal-bearing properties in Taylor County, West Virginia. The dispute giving rise to this case involves tax assessments made on properties owned by each respondent during the 2010 tax year. Tax assessments made on Coalquest's properties during the 2011 tax year are also at issue.

Sometime prior to February 1, 2010, the State Tax Commissioner ("Commissioner") appraised the respondents' properties. The Commissioner then provided those values to the Assessor. The Assessor accepted those values and placed them in the Taylor County land books. Thereafter, the Assessor hired Jerry Knight of Knight Consulting to review the values for accuracy. Mr. Knight consulted with Scott Burgess, then Assistant Director of the State's Property Tax Division. The two men found what they believed to be errors in the appraisals provided by the Commissioner. Specifically, they believed the Commissioner had under-appraised the property.

2

The Assessor presented the new values calculated by Mr. Knight and Mr. Burgess to the Board, requesting that the Board approve changing the values she had already entered in the land books. The Board held a number of hearings to address the issue. During a hearing on February 12, 2010, the Assessor challenged the original values assigned to property owned by Coalquest and Patriot. The Assessor and the property owners disagreed over whether the Assessor was using the correct procedure to change the value assigned to properties. At the hearing, Mr. Knight testified:

> What Ms. Collett did was, she received the values. She placed them on the property books. One of the reasons she did so was because she received them in January; 10% notices had to go out in the beginning of January. She had little, if any, time to even review these values to present the issue to the Property Valuation Training and Procedures Commission. I'll call it the PVC for short; because that's what everybody does. To present it to the PVC about mid-January. So Ms. Collett put the value on the books. She accepted the appraised value and put them on the books.
> Now the issue here is the appeal of those values under a different statute, totally different statute. The statute is 11-3-24,[1] the Board of Equalization and Review statute. This particular statute, bear with me a moment till I get there, indicates that generally that any person can apply to the board of review and equalization for the correction of the assessment. There's supreme court case law on that that suggests that any individual can appeal any entry on those books. It's the Tug Valley Recovery case.[2] And the assessor, in exercising her right just like any other person in the state of West Virginia who has the right, is presenting these issues before this board so that the board can carry out it's [sic] duty

---

[1] W. Va. Code § 11-3-24 (2010) is quoted *infra* Part III.

[2] *Tug Valley Recovery Ctr., Inc. v. Mingo Cnty. Comm'n*, 164 W. Va. 94, 261 S.E.2d 165 (1979).

of examining the information and correcting any and all errors that are found in the property books.

(Footnotes added).

The Board held a second hearing on February 22, 2010, addressing the property owned by Coalquest, Patriot, Eastern, and Trio. Mr. Knight attempted to clarify the position he took in the first hearing:

> [I]n this instance the assessor accepted the tax department's appraisals and placed them on the books at 60% of market value. The assessor isn't---isn't rejecting the appraisals. The assessor is suggesting that---that one factor, at the recommendation of the state tax department, should be changed.
>      . . . .
> [T]he assessor has a statutory duty under West Virginia Code 11-3-24 to assist this body in their deliberations concerning the compliance with state statutes--- state regulations concerning the valuation of the property that's on the property books that were presented to this commission for its---it's [sic] review and consideration.
> I did indicate that the Tug Valley Recovery case that's annotated in 11-3-24 does indicate that any person or any taxpayer has the---has the right to appear here. I certainly didn't intend to indicate, and I don't believe I did indicate, that the assessor was appearing here as a person. The assessor certainly is appearing here in her capacity as an assessor to assist the board under the provisions of 11-3-24, as that statute requires in its deliberation concerning these issues.

Mr. Knight and Mr. Burgess again testified to what they believed were mistakes in the initial values provided by the Commissioner.

4

Through letters dated March 2, 2010, the Board notified the respondents that it had accepted the Assessor's proposed changes to the valuation of the property. These changes radically increased the value assigned to each owner: The Commissioner appraised Eastern's property at $119,634, and the Board changed the valuation to $1,449,447, increasing the original valuation by $1,329,813 (1112%); the Commissioner appraised Coalquest's property at $3,219,616, and the Board changed the valuation to $7,147,056, increasing the original valuation by $3,927,440 (122%); the Commissioner appraised Patriot's property at $13,791, and the Board changed the valuation to $153,586, increasing the original valuation by $139,795 (1014%); and the Commissioner appraised Trio's property at $278,958, and the Board changed the valuation to $3,404,849, increasing the valuation by $3,125,891 (1121%).

All of the owners appealed the Board's decision to the circuit court. By order dated September 21, 2010, the circuit court ordered that the parties mediate the dispute. Following mediation on December 14, 2010, the mediator submitted a report to the court on December 16, 2010, stating that mediation had failed.

A few months thereafter, on February 18, 2011, Coalquest received notice of the Assessor's intent to ask the Board to increase the 2011 assessment of its property. Following a hearing on February 28, 2011, the Board notified Coalquest via letter dated March 1, 2011, that it had accepted the Assessor's proposed changes to the valuation of its property. The Commissioner appraised Coalquest's property at $1,648,997, and the

Board changed the valuation to $18,730,989, increasing the valuation by $17,081,992 (1036%). Coalquest appealed the Board's decision to the circuit court.

On January 12, 2012, the circuit court heard argument on the respondent owners' petitions for appeal. The circuit court granted the respondents' requests for appeal on January 23, 2012. By order dated May 10, 2012, the circuit court reversed the Board's valuation changes, finding that the proceedings before the Board were unlawful because the Assessor did not comply with procedure set by statute. The court further found that the procedures were also in violation of constitutional provisions resulting in "unequal taxation that is not uniform across the State." The court ordered that the values all be returned to the initial values set by the Commissioner and that all of the respondents be exonerated from the payment of the difference. The petitioners now appeal the May 10, 2012, order to this Court.

## II.

## STANDARD OF REVIEW

When evaluating a circuit court's order reviewing a decision of a Board of Equalization and Review, this Court applies a multifaceted standard of review:

> This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*." Syllabus point 4, *Burgess v. Porterfield,* 196 W.Va. 178, 469 S.E.2d 114 (1996).

6

Syl. pt. 1, *In re Tax Assessment of Foster Found. Woodlands Ret. Cmty.*, 223 W. Va. 14,

672 S.E.2d 150 (2008).

## III.

## ANALYSIS

On appeal, the petitioners submit five assignments of error to the Court.[3]

We note, however, that the petitioners did not organize the argument in their brief under

---

[3] The petitioners' five separate assignments of error are as follows:

> 1.   The Circuit Court erred in its Final Order entered on May 10, 2012, (hereinafter 'Final Order'), reversing the five decisions of the County Commission of Taylor County sitting as the Board of Equalization and Review (hereinafter 'Board') and ordering that the assessments of [Respondents'] properties be returned to the initial values provided by the State Tax Commissioner and recorded upon the land books in Taylor County, West Virginia.

> 2.   The Circuit Court erred in its Final Order in ruling that, as a matter of law, under W. Va. Code §11-1C-7a, the State Tax Commissioner has the exclusive jurisdiction to assess natural resources property and that the Assessor had no legal authority to hire a separate consultant to review appraisals conducted by the State Tax Commissioner and to question the methods of the State Tax Commissioner.

> 3.   The Circuit Court erred in its Final Order in ruling that, as a matter of law, under W. Va. Code §11-1C-10(g), the only way for the Assessor to change the assessed value of [Respondents'] property was for the Assessor to apply to the West Virginia Property Valuation Training and Procedures Commission.

(continued . . .)

each of these assignments of error as is required by Rule 10(c)(7) of the Revised Rules of Appellate Procedure.[4]  Instead, the petitioners' argument is organized under two headings, the first of which describes what the petitioners see to be the duties of the Assessor and the County Commission, and the second of which pronounces the petitioners' actual argument:  "The circuit court erred in ruling as a matter of law, under W. Va. Code § 11-1C-10(g), that the only way for the assessor to change the assessed value of [respondents'] natural resource properties was for the assessor to apply to the West Virginia Property Valuation Training and Procedures Commission."  Upon our review of the petitioners' brief, we find that the five assignments of error, which are largely repetitive, are thoroughly encapsulated by the second heading in the brief. Therefore, we will continue by addressing all five assignments of error as one. *See W. Va. Dep't of Health & Human Res. v. Payne*, ___ W. Va. ___, 746 S.E.2d 554, 560 n.11 (2013).

---

4.     The Circuit Court erred in its Final Order in ruling that applicable Legislative Rules and methodologies were disregarded at the Board hearings.

5.     The Circuit Court erred in its Final Order in reversing the five decisions by the Board because the Board hearings were not in violation of statutory provisions or founded upon unlawful procedures.

[4] Rule 10(c)(7) of the Revised Rules of Appellate Procedure requires that a petitioner's brief "must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error."

At the outset, we recognize that although the parties dispute a number of the facts involved in this case, particularly those used in valuing the respondents' property, the issue before the Court is purely legal and involves only the interpretation of the applicable statutory sections. More specifically, we are tasked with determining the duties and limitations of the Assessor and the Board. Therefore, our review is *de novo*. Because a large number of statutory sections within West Virginia's Tax Code are relevant, we will begin our analysis by examining those statutes and how they interact before proceeding to our examination of the issue presented by the petitioners.

There are three articles in Chapter 11 of the West Virginia Code that are applicable to this case: Article 1C, which was enacted in 1990; Article 3, which was enacted in 1904; and Article 6K, which was enacted in 2010. The property at issue in this case is classified "natural resources property" under W. Va. Code § 11-1C-10(a)(2) (1994). Pursuant to W. Va. Code § 11-1C-10(d), "the state Tax Commissioner shall determine the fair market value of all natural resources property in the State." *See also* W. Va. Code § 11-6K-4(d) (2010) ("[T]he Tax Commissioner shall annually value and make tentative appraisals of all . . . natural resources property as provided in section ten [§ 11-1C-10], article one-c of this chapter.").[5] The Commissioner performs its appraisals using a valuation plan set pursuant to W. Va. Code § 11-1C-10(e).

---

[5] W. Va. Code Chapter 11 Article 6K was enacted after the respondents' property was appraised for the 2010 tax year. While Article 6K is not applicable to the 2010 tax assessments, it is applicable to the 2011 tax year assessment challenged by Coalquest.

The Tax Commissioner shall develop a plan for the valuation of . . . natural resources property. The plan[] shall include expected costs and reimbursements, and shall be submitted to the Property Valuation Training and Procedures Commission on or before the first day of January, one thousand nine hundred ninety-one, for its approval on or before the first day of July of such year. Such plan shall be revised, resubmitted to the commission and approved every three years thereafter.

W. Va. Code § 11-1C-10(e). The Property Valuation Training and Procedures Commission ("PVC" or "Valuation Commission") is established through W. Va. Code § 11-1C-3 (1990), which states, in part:

There is hereby created, under the Department of Tax and Revenue, a Property Valuation Training and Procedures Commission which consists of the state Tax Commissioner, or a designee, who shall serve as chairperson of the commission, three county assessors, five citizens of the State, one of which shall be a certified appraiser, and two county commissioners.

Upon producing tentative appraisals, the Commissioner forwards the appraisals to both the property owner and the applicable county assessor pursuant to W. Va. Code § 11-6K-4(e). At that time, the owner and/or the county assessor may challenge the appraisal via petition to the Commissioner pursuant to W. Va. Code § 11-6K-5 (2010). Final appraisals are also provided to the county assessor. W. Va. Code § 11-1C-10(d)(2); *see also* W. Va. Code § 11-6K-6(b) (2010) ("[T]he Tax Commissioner shall forward each [final] . . . natural resources property appraisal to the county assessor."). Along with the appraisal itself, the Commissioner must

10

supply support data that the assessor might need to explain or defend the appraisal. The commissioner shall directly defend any challenged appraisal when the assessed value of the property in question exceeds two million dollars or an owner challenging an appraisal holds or controls property situated in the same county with an assessed value exceeding two million dollars.

W. Va. Code § 11-1C-10(d)(2).

Prior to the enactment of Chapter 11, Article 6K, upon receiving the appraisals from the Commissioner, county assessors were required to notify property owners of any increase in the valuation of the property if that increase was ten percent greater or $1,000 more than the previous year's valuation at least fifteen days before the board of equalization and review's first meeting in February. W. Va. Code § 11-3-2a (2008).

> If the assessor determines the assessed valuation of any item of real property is more than ten percent greater than the valuation assessed for that item in the last tax year, the increase is one thousand dollars or more and the increase is entered in the property books as provided in section nineteen of this article, the assessor shall give notice of the increase to the person assessed or the person controlling the property as provided in section two of this article. The notice shall be given at least fifteen days prior to the first meeting in February at which the county commission meets as the board of equalization and review for that tax year and advise the person assessed or the person controlling the property of his or her right to appear and seek an adjustment in the assessment.

*Id.* After Chapter 11, Article 6K was enacted in 2010, W. Va. Code § 11-3-2a was amended to include the following language: "[T]his notification requirement does not

apply to industrial or natural resources property appraised by the Tax Commissioner under article six-k [§§ 11-6K-1 et seq.] of this chapter . . . ." W. Va. Code § 11-3-2a (2010).[6] Now, under W. Va. Code § 11-6K-4(e), the Commissioner must complete tentative appraisals of natural resources property by October 15 of the tax year and thereafter provide that tentative appraisal to the property owner and to the assessor. The Commissioner must finalize tentative appraisals by December 15 of the tax year and provide the final appraisals to the county assessors. W. Va. Code § 11-6K-6.

W. Va. Code § 11-1C-10(g) provides two courses of action an assessor may take upon receiving the Commissioner's appraisal:

> The county assessor may accept the appraisal provided, pursuant to this section, by the state tax commissioner: Provided, That if the county assessor fails to accept the appraisal provided by the state Tax Commissioner, the county assessor shall show just cause to the valuation commission for the failure to accept such appraisal and shall further provide to the valuation commission a plan by which a different appraisal will be conducted.

Pursuant to W. Va. Code § 11-1C-10(g), an assessor may either (1) accept the appraisal, or (2) reject the appraisal. If the assessor accepts the appraisal, the assessor "shall multiply each such appraisal by sixty percent and include the resulting assessed value in the land book . . . for each tax year." W. Va. Code § 11-1C-10(d)(2). If the assessor

---

[6] W. Va. Code § 11-3-2a (2008) was also amended in 2010 to specify that notice must be provided to landowners of increased valuations by January 15 of the tax year.

rejects the Commissioner's appraisal, the assessor shall cooperate with the PVC as required by W. Va. Code § 11-1C-10(g).[7]

The County Commission, meeting as the Board, convenes to review and equalize the assessments made by the assessor. W. Va. Code § 11-3-24(a) (2010).

> At the first meeting of the board, the assessor shall submit the property books for the current year, which shall be complete in every particular, except that the levies shall not be extended. The assessor and the assessor's assistants shall attend and render every assistance possible in connection with the value of property assessed by them.

W. Va. Code § 11-3-24(b). The Board is tasked with correcting "all errors in the names of persons, in the description and valuation of property, and shall cause to be done whatever else is necessary to make the assessed valuations comply with the provisions of

---

[7] W. Va. Code § 11-6K-6(c) describes the process by which a taxpayer may challenge an assessment of natural resources property. That statute states:

> Any taxpayer claiming to be aggrieved by any assessment made pursuant to this article may appeal the assessment as provided under the provisions of article three [§§ 11-3-1 et seq.] of this chapter: Provided, That if the assessment exceeds sixty percent of the final appraisal by the Tax Commissioner, the taxpayer may notify the Tax Commissioner in writing of this error, whereupon he or she shall, if the error is confirmed, instruct the assessor in writing to lower the assessment to sixty percent of the final appraisal. The assessor shall, upon receipt of instruction from the Tax Commissioner, lower the assessment as required.

A taxpayer who wishes to appeal an assessment of natural resources property must proceed pursuant to W. Va. Code § 11-3-23a(d) (2010) and W. Va. Code § 11-3-24.

this chapter." W. Va. Code § 11-3-24(c). The Board may not consider or review any question of classification or taxability. *Id.* If the Board determines that an assessment must be increased, it must provide "the taxpayer with at least five days' notice, in writing, of the intention to make the increase." W. Va. Code § 11-3-24(d).[8] Taxpayers receiving a notice of increase from the Board "may appear before the board at the time and place specified in the notice to object to the proposed increase in the valuation of taxpayer's property." W. Va. Code § 11-3-24(f).

In the case *sub judice*, the Assessor accepted the Commissioner's appraisals of the respondents' property and entered the assessed value in the land books pursuant to W. Va. Code § 11-1C-10(g) and § 11-1C-10(d)(2). Thereafter, she advised the Board that the values were incorrect, and she sought to have the land books changed. The Board approved the changes requested by the Assessor, ordering that the land books be changed to reflect the valuations calculated by the Assessor.

The respondent property owners maintain that the circuit court correctly found that the Board may not change the Commissioner's appraisal at the request of the

---

[8] In this case, the circuit court recognized that the Assessor waited until "the eleventh hour" to challenge the appraisals before the Board during the 2010 tax year, providing the first notice of the intent to increase the valuation of the respondents' property in February pursuant to W. Va. Code § 11-3-24(d). The Assessor argued that she had such authority, despite the notice requirement set forth in W. Va. Code § 11-3-2a (2008), requiring that she provide the notice no later than fifteen days prior to the first meeting of the Board.

Assessor under W. Va. Code § 11-3-24. Instead, the respondents contend that the Assessor must submit her requested changes to the PVC pursuant to W. Va. Code § 11-1C-10(g). The question the Court now faces is a question of legislative intent: In enacting W. Va. Code § 11-1C-10, did the Legislature intend to limit the powers granted by W. Va. Code § 11-3-24 to county assessors in pursuing challenges to the Commissioner's appraisals of natural resources property, by requiring the county assessors take those challenges to the PVC?

When interpreting statutes, this Court looks first to the plain language of the statute. "''"A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. Pt. 2, *State v. Epperly,* 135 W.Va. 877, 65 S.E.2d 488 (1951).' Syl. Pt. 1, *State v. Jarvis,* 199 W.Va. 635, 487 S.E.2d 293 (1997)." Syl. pt. 2, *Mace v. Mylan Pharm., Inc.*, 227 W. Va. 666, 714 S.E.2d 223 (2011). "A statute is open to construction only where the language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning." *Hereford v. Meek*, 132 W. Va. 373, 386, 52 S.E.2d 740, 747 (1949). Upon our examination of the statutes, we believe the authority of county assessors is unclear; while W. Va. Code § 11-1C-10(g) appears to limit how an assessor treats an appraisal to two options, to accept or reject, it does not explicitly state that the limitation excludes the assessor's authority under W. Va. Code § 11-3-24 to correct errors in assessments.

When there is uncertainty as to the meaning of statutes, the statutes must be evaluated to give effect to the intent of the Legislature. Syl. pt. 4, *Mace*, 227 W. Va. 666, 714 S.E.2d 223 ("'"The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syllabus point 1, *Smith v. State Workmen's Compensation Commissioner,* 159 W.Va. 108, 219 S.E.2d 361 (1975).' Syl Pt. 3, *Davis Mem'l Hosp. v. W. Va. State Tax Comm'r,* 222 W.Va. 677, 671 S.E.2d 682 (2008)."). "'"In ascertaining legislative intent, effect must be given to each part of the statute and to the statute as a whole so as to accomplish the general purpose of the legislation." Syl. Pt. 2, *Smith v. State Workmen's Compensation Commissioner,* 159 W.Va. 108, 219 S.E.2d 361 (1975).' Syl. Pt. 2, *White v. Wyeth,* 227 W.Va. 131, 705 S.E.2d 828 (2010)." Syl. pt. 5, *Mace*, 227 W. Va. 666, 714 S.E.2d 223. When the interplay of multiple statutory sections is also at issue, we have said:

> Consistency in statutes is of prime importance, and, in the absence of a showing to the contrary, all laws are presumed to be consistent with each other. Where it is possible to do so, it is the duty of the courts, in the construction of statutes, to harmonize and reconcile laws, and to adopt that construction of a statutory provision which harmonizes and reconciles it with other statutory provisions * * *.

*State ex rel. Pinson v. Varney*, 142 W.Va. 105, 109–10, 96 S.E.2d 72, 75 (1956) (internal quotations and citations omitted). Following our careful examination of the applicable statutory sections, we conclude that the Legislature intended for county assessors to

16

challenge the Commissioner's appraisals before the PVC and not before their respective boards of equalization and review.

Although W. Va. Code §§ 11-3-1 to -33 charge county assessors with the task of appraising property within their counties, the Legislature has specifically provided exceptions. The valuation of natural resources property constitutes one such exception. W. Va. Code § 11-1C-7 (2003) explicitly excludes from the responsibilities of county assessors the task of appraising natural resources property. W. Va. Code § 11-1C-7 ("Except for property appraised by the state Tax Commissioner under section ten [§ 11-1C-10] of this article . . . all assessors shall . . . appraise all real and personal property in their jurisdiction at fair market value . . . ."). Instead, under W. Va. Code § 11-1C-10, the Legislature has placed the responsibility of appraising natural resources property within the province of the Commissioner. The Commissioner accomplishes this task by implementing valuation plans in cooperation with the PVC, a group made up of officials from all over the state, including the Commissioner. Certainly, if the primary responsibility of appraising natural resources property throughout West Virginia is delegated to the Commissioner and the PVC, then the Commissioner and the PVC are in the best position to review challenges to those valuations.

Furthermore, it is this Court's belief that the Legislature has placed the responsibility of appraising natural resources property in the hands of the Commissioner to ensure compliance with the West Virginia Constitution. Article 10, § 1 of the West

Virginia Constitution requires that taxation "be equal and uniform throughout the state." The goal of providing uniform taxation throughout the state is echoed in W. Va. Code § 11-1C-1(a) (1990):

> The Legislature hereby finds and declares that all property in this State should be fairly and equitably valued wherever it is situated so that all citizens will be treated fairly and no individual species or class of property will be overvalued or undervalued in relation to all other similar property within each county and throughout the State.

If county assessors are permitted to alter accepting the Commissioner's appraisals to then turn around and challenge those appraisals before their local boards of equalization and review, there will be no check on whether the tax is equal and uniform throughout the state.[9] When challenges are made to the PVC, the PVC and the Commissioner are able to review each county assessor's challenge in the context of natural resources valuations on a state-wide level, thereby ensuring equal and uniform taxation state wide.

---

[9] We also note that at oral argument, the fairness of proceedings before boards of equalization and review was discussed. County assessors and county commissioners are elected by the citizens of the county in which they reside. It has been previously suggested by Eastern's counsel that because "a county commission has the ultimate responsibility for the fiscal affairs of each county . . . a commission has an inherent interest in maximizing the revenue available to the county . . . ." Steven R. Broadwater, *The Illusion of Due Process in West Virginia's Property Tax Appeals System: What Illusion?*, 113 W. Va. L. Rev. 791, 801 (2011) (quoting Brief of Appellant at 16, *Bayer MaterialScience, LLC v. State Tax Commissioner*, 672 S.E.2d 174 (W. Va. 2008)). However, because the petitioners did not raise as error the due process implications involved in challenges of valuations made to county commissions sitting as boards of equalization and review, we will not address the issue at this time.

We find that W. Va. Code § 18-9A-11 (2008) is also instructive. That section, which relates to the appraisal and assessment of real property for the support of the public school system, includes a subsection describing the responsibilities of county assessors, county commissions, and the Commissioner:

> Whenever in any year a county assessor or a county commission fails or refuses to comply with the provisions of this section in setting the valuations of property for assessment purposes in any class or classes of property in the county, the State Tax Commissioner shall review the valuations for assessment purposes made by the county assessor and the county commission and shall direct the county assessor and the county commission to make corrections in the valuations as necessary so that they comply with the requirements of chapter eleven [§§ 11-1-1 et seq.] of this code and this section and the Tax Commissioner shall enter the county and fix the assessments at the required ratios. Refusal of the assessor or the county commission to make the corrections constitutes grounds for removal from office.

W. Va. Code § 18-9A-11(c). In *Tug Valley Recovery Center, Inc. v. Mingo County Commission*, 164 W. Va. 94, 108, 261 S.E.2d 165, 173 (1979), this Court discussed the operation of W. Va. Code § 18-9A-11 as follows:

> This Court recognizes the problems inherent in setting the proper amount of tax to be paid on any given parcel of land. The assessment of real estate values is a very technical and complex area, particularly insofar as we are dealing with the assessment of mineral estates, those estates being invisible to the eye and being difficult to properly and scientifically assess. . . .
> The task is lightened to a great extent by the provisions of W. Va. Code § 18-9A-11. As mentioned previously, that section of the Code specifically provides that the State Tax Commissioner is to make an appraisal of all mineral and surface estates in West Virginia, and that appraisal is to serve as the basis for determining the true and actual value for all assessment purposes. Therefore, once the Tax

19

> Commissioner's appraisal has been made, the duty of the circuit court is clear and the taking of further evidence would not be necessary. It is incumbent upon the circuit court, as it would be upon the county commission and the assessor, to set the assessed value of all parcels of land at the amount established by the State Tax Commissioner.

(Emphasis removed). In recognizing the importance of deferring to the Commissioner's appraisals, the Court held, "In all cases, it is incumbent upon the circuit court, as it is upon the county commission and the assessor, to set the assessed value of all parcels of land at the amount established by the State Tax Commissioner[.] W. Va. Code § 18-9A-11." Syl. pt. 5, *Tug Valley Recovery Ctr.*, 164 W. Va. 94, 261 S.E.2d 165.

Additionally, we note that the language of W. Va. Code § 11-1C-10(g) provides assessors with two very explicit courses of action: accept the Commissioner's appraisal or reject it. The Legislature has not provided a mechanism by which an assessor may challenge an appraisal after having accepted it. It is our belief that by refusing to include that third course of action, the Legislature did not intend to permit an assessor to challenge an appraisal after having accepted the same.

In spite of our interpretation of the Legislature's intent with regard to § 11-1C-10(g), the Assessor makes a compelling argument that she is not bound by the appraisals provided to her by the Commissioner, and that instead she is obligated, under W. Va. Code § 11-3-24, to request that the Board make changes such as those at issue in this case. She relies primarily on *In re 1994 Assessments of Property of Righini*, 197 W.

20

Va. 166, 475 S.E.2d 166 (1996), which also dealt with the valuation of natural resources property, in support of her position that she is not bound by the valuations provided to her by the Commissioner.

In *Righini*, the type of natural resources property at issue was "managed timberland".[10] The property was certified as managed timberland by the Division of Forestry pursuant to W. Va. Code § 11-1C-11(b)(1), which states, "[T]imberland certified by the Division of Forestry as managed timberland shall be valued as managed timberland . . . ." The Commissioner valued the property as managed timberland and provided its appraisals to the county assessor of Morgan County. The county assessor then appraised the property based on actual market value instead of using the Commissioner's value. The county assessor's value was much higher than the Commissioner's value.

The property owners protested the value assigned by the county assessor and sought review by the Morgan County Board of Equalization and Review ("Morgan

_____

[10] Managed timberland, as defined by W. Va. Code § 11-1C-2(b) (2000), is

> surface real property, except farm woodlots, of not less than ten contiguous acres which is devoted primarily to forest use and which, in consideration of their size, has sufficient numbers of commercially valuable species of trees to constitute at least forty percent normal stocking of forest trees which are well distributed over the growing site, and that is managed pursuant to a plan provided for in section ten [§ 11-1C-10] of this article.

21

Board"). The owners argued that because the Division of Forestry had certified the property as managed timberland, neither the county assessor nor the Morgan Board had the power to reclassify the property and change the valuations of property accordingly. The Morgan Board upheld the county assessor's appraisal, but on appeal, the circuit court reversed.

This Court reversed the decision of the circuit court and reinstated the valuations determined by the county assessor and the Board. In doing so, the *Righini* Court said:

> We can reach no other conclusion other than the Division of Forestry is the agency designated to inspect property that a taxpayer contends to be managed timberland to determine if that property qualifies for managed timberland certification. We do not agree that W. Va.Code 11-1C-11 (1990) represents the legislative expression that vests managed timberland assessment authority in the Division of Forestry. This statutory provision authorizes the Division of Forestry to assist other taxing authorities in the managed timberland certification process, but does not preempt the assessor and county commission from their ultimate authority and responsibility of determining the true and actual value of real and personal property.

*Righini*, 197 W. Va. at 171, 475 S.E.2d at 171 (footnote omitted). In reaching this conclusion, the Court did not apply W. Va. Code § 11-1C-10(g), stating:

> W. Va.Code 11-1C-10(g) prescribes the evaluation of natural resources property, including managed timberland, that provides the protocols for an assessor to question the appraisal of the natural resources property. However, that statutory provision has not been cited or relied upon by the parties as being relevant to the resolution of the issues in this case.

22

*Righini*, 197 W. Va. at 171 n.17, 475 S.E.2d at 171 n.17. The *Righini* Court then proceeded to create the following two new syllabus points:

> 1.  The county commission's power to "fix property" at its true and actual value, pursuant to W.Va.Code 11-3-24 (1979), includes the power to increase or decrease the value, which in turn, includes the power to rescind the certification made by the Division of Forestry of managed timberland, because that certification affects the value of property.
> 2.  W.Va.Code 11-1C-11 (1990) authorizes the Division of Forestry to assist other taxing authorities in the managed timberland certification process, but does not preempt the assessor and county commission from their ultimate authority and responsibility of determining the true and actual value of real and personal property.

*Id.*

Upon our reading of *Righini*, we agree with the Assessor that the case does support her position. *Righini* implicitly allows a county assessor and her county's board of equalization and review to change, pursuant to W. Va. Code § 11-3-24, the valuation of natural resources property provided to the assessor by the Commissioner. However, upon our examination of *Righini* in light of the current case before the Court, we are convinced that *Righini* was decided in error and that the power conferred by that case to county assessors and county commissions is inconsistent with the Legislature's intent in promulgating W. Va. Code § 11-1C-10(g), a statutory provision not therein considered by the *Righini* Court.

23

The Court's error in *Righini* is two-fold. First, the parties and the Court incorrectly framed the issue, questioning the county assessor's relation to the Division of Forestry instead of the county assessor's relation to the Commissioner. The real dispute in the case involved what tax the property owners owed. The tax owed is determined using an appraisal. Appraisals of managed timberland are made by the Commissioner. The *Righini* Court mistakenly focused on the Division of Forestry, which only has the authority to classify property as managed timberland. The classification is not what actually mattered to the disposition of this case, but the appraisal produced by the Commissioner using that classification. It is not relevant whether county assessors have the power to change the classification of property if they do not then also have the power to change the valuations provided by the Commissioner.

Second, because the Commissioner's valuation of property was at the root of the issue, not the classification by the Department of Forestry, application of W. Va. Code § 11-1C-10(g) was essential to the result in the case, and the *Righini* Court erred by refusing to apply that section. It is not clear whether the county assessor in *Righini* accepted or rejected the appraisals provided to it by the Commissioner, but it is clear that the assessor did not take its dispute to the PVC as is required by W. Va. Code § 11-1C-10(g). Instead, the county assessor challenged the appraisals pursuant to W. Va. Code § 11-3-24. As we discussed above, it is our belief that the Legislature intended that a county assessor's challenge to an appraisal provided to her by the Commissioner be presented to the PVC. Although *Righini*'s syllabus points do not explicitly state that

24

assessors may request that the Board change the Commissioner's valuations, the result and the syllabus points of the case implicitly grant that authority in error.

Because the two syllabus points of *Righini* implicitly allow assessors to change the appraisals provided to it by the Commissioner, we conclude that *Righini* must be overruled. In doing so, we acknowledge that the doctrine of stare decisis, which promotes the stability of the law, weighs against overruling cases. "An appellate court should not overrule a previous decision recently rendered without evidence of changing conditions or serious judicial error in interpretation sufficient to compel deviation from the basic policy of the doctrine of stare decisis, which is to promote certainty, stability, and uniformity in the law." Syl. pt. 2, *Dailey v. Bechtel Corp.*, 157 W. Va. 1023, 207 S.E.2d 169 (1974). However, "when it clearly is apparent that an error has been made or that the application of an outmoded rule, due to changing conditions, results in injustice, deviation from that policy is warranted." *Woodrum v. Johnson*, 210 W. Va. 762, 766 n.8, 559 S.E.2d 908, 912 n.8 (2001) (internal quotations and citations omitted).

We hold that pursuant to W. Va. Code § 11-1C-10(g) (2010), upon receiving the appraisal of natural resources property from the State Tax Commissioner, a county assessor may either accept or reject that appraisal. If the assessor rejects the appraisal, the assessor must show just cause for doing so to the Property Valuation Training and Procedures Commission, including a plan by which a different appraisal should be conducted. If the assessor accepts the appraisal, the assessor is then foreclosed

25

from later challenging the appraisal before either the Property Valuation Training and Procedures Commission under W. Va. Code § 11-1C-10(g) or the Board of Equalization and Review under W. Va. Code § 11-3-24 (2010). To the extent that *In re 1994 Assessments of Property of Righini*, 197 W. Va. 166, 475 S.E.2d 166 (1999), holds otherwise, it is expressly overruled.[11]

## IV.

## CONCLUSION

For the reasons set forth above, this Court affirms the May 10, 2012, Final Order of the Circuit Court of Taylor County as to each of the respondents herein.

Case Number 12-0764 — Affirmed.

Case Number 12-0765 — Affirmed.

Case Number 12-0766 — Affirmed.

Case Number 12-0767 — Affirmed.

Case Number 12-0768 — Affirmed.

---

[11] Eastern includes "cross-assignments of error" in its brief, alleging that the Assessor wrongfully hired a consultant, that Eastern did not have adequate time to prepare its defense before the Board, and that the Assessor's consultant provided false testimony. Because each of these allegations does not allege error in the underlying order, they are not technically cross-assignments of error. Instead, they are a continuation of the arguments made in response to the petitioners' brief. Because our ruling today is in favor of Eastern, and because that ruling makes irrelevant Eastern's "cross-assignments of error", we find that it is unnecessary to address them in any further detail.